UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMES T.,

                Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1:20-CV-00650-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 25).

Plaintiff James T.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying him Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits (SSI) under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 18) is granted and defendant's motion (Dkt. No. 22) is denied and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

---

[1] In accordance with the District's November 18, 2020 Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff protectively filed applications for DIB and SSI on February 2, 2017 alleging disability since January 15, 2013 due to herniated lumbar disc L5-S1 surgery, constant severe back pain which radiates down leg, post-traumatic stress disorder (PTSD), anxiety, bipolar, depression, heel spur on Achilles tendon on right leg, severe heel pain, and carpal tunnel in both hands. (See Tr. 245-57, 271-87).[3] Plaintiff's DIB and SSI applications were initially denied on May 24, 2017. (Tr. 140-73). Plaintiff sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") Stephan Bell on February 26, 2019. (Tr. 67-113). ALJ Bell heard testimony from plaintiff, who was represented by counsel, and Dawn Blythe, an impartial vocational expert ("VE"). (Id.). On March 14, 2019, ALJ Bell issued a decision that plaintiff was not disabled under the Act. (Tr. 18-37). Plaintiff sought review by the Appeals Council and his request was denied. (Tr. 1-6). The ALJ's March 14, 2019 denial of benefits became the Commissioner's final determination, and the instant lawsuit followed.

Born on March 23, 1971, plaintiff was 41 years old on the alleged disability onset date and 47 years old on the date of the hearing. (Tr. 35). Plaintiff is able to communicate in English, has a high school education, and previously worked as a cook and a tractor-trailer moving van driver. (Tr. 34-35).

---

[2] The Court presumes the parties' familiarity with the plaintiff's medical history, which is summarized in the moving papers.

[3] References to "Tr." are to the administrative record in this case.

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as

3

described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

## II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that

4

work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the

claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III.   *The ALJ's Decision*

ALJ Bell found that plaintiff met the insured status requirements of the Act through December 31, 2015. (Tr. 23). The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since January 15, 2013, the period at issue. (*Id.*). At step two, the ALJ found that plaintiff had the following severe impairments: (1) degenerative disc disease of the lumbar spine with status post discectomy, fusion, and revision residuals; (2) right Achilles calcific insertion tendinosis and status post revision surgery; (3) bilateral carpal tunnel syndrome with status post release and revision on the right; (4) asthma; (5) morbid obesity; (6) chronic pain syndrome; (7) major depressive disorder; (8) generalized

6

anxiety disorder/social anxiety disorder; (9) and "an adjustment disorder with alcohol, cannabis, and cocaine abuse conditions in the past and presently in sustained remission." (Tr. 24). At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 25-28). Before proceeding to step four, the ALJ assessed that plaintiff had the following RFC:

> [T]he [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) or lift and/or carry less than 10 pounds frequently and 10 pounds occasionally; sitting for 6-hours, standing for 2-hours and walking for 2-hours; push and/or pull as much as can lift and/or carry; he can handle and finger items frequently with the left hand, and the right hand; the [plaintiff] can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, crawl occasionally; the [plaintiff] can never work at unprotected heights, never around moving mechanical parts, and never operate a motor vehicle. He can work in dust, odors, fumes and pulmonary irritants occasionally, and never work in vibration; he is able to perform simple, routine and repetitive tasks and is able to perform simple work-related decision; he can occasionally interact with supervisors and coworkers; and he can never interact with the public.

(Tr. 28).

Proceeding to step four, the ALJ reviewed the vocational information and the testimony of VE Blythe to conclude that plaintiff was unable to perform past relevant work given the limitations set forth in his residual functional capacity. (Tr. 34-35). The ALJ noted that if the plaintiff had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed. (Tr. 35). However, the ALJ assessed that plaintiff's ability to perform sedentary work was compromised by additional limitations. (*Id.*) Proceeding to step five, and after considering testimony from VE Blythe in addition to plaintiff's age, education, work experience, and RFC, the ALJ found that there are other jobs that exist in significant numbers in the national economy that plaintiff

could perform, such as document preparer, addresser, and ampoule sealer. (Tr. 36). Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act from January 15, 2013 through March 14, 2019, the date of the decision. (Tr. 36-37).

IV.   *Plaintiff's Challenges*

Plaintiff argues that (1) the ALJ relied on stale opinion evidence in formulating the RFC, and (2) the ALJ erroneously weighed the opinion evidence and based the RFC on his own lay opinion. The Court agrees that the ALJ relied on stale opinion evidence and remand is warranted.

In deciding a disability claim, the ALJ must "evaluate every medical opinion he receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997) (citing 20 C.F.R. § 404.152(d)). Although an ALJ's conclusions may not "perfectly correspond" with any of the opinions of medical sources cited in his decision, he is entitled to weigh all of the evidence available to make findings that are consistent with the record as a whole. *See Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (summary order) (citing *Perales*, 402 U.S. at 399) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).

8

"[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (quotation marks and citation omitted). A medical opinion may be stale if it does not account for the claimant's deteriorating condition. *Carney v. Berryhill*, 16-CV-269, 2017 U.S. Dist. LEXIS 72784, at *15 (W.D.N.Y. May 12, 2017) (citations omitted). "In considering whether a medical opinion is stale, courts have frequently pointed to surgeries occurring subsequent to the medical opinion as evidence of the claimant's deteriorating condition." *Perry C. v. Comm'r of Soc. Sec.*, 19-CV-0772, 2021 U.S. Dist. LEXIS 24899, at *14-15 (W.D.N.Y. Feb. 9, 2021); *see e.g., Melissa A. v. Saljl*, 19-CV-838, 2021 U.S. Dist. LEXIS 56059, *16-17 (W.D.N.Y. Mar. 24, 2021) (holding that the ALJ erred in relying on opinion that was stale because plaintiff underwent three significant surgeries following the examination); *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp 3d 464, 471 (W.D.N.Y. 2018) (concluding that medical opinion was stale where rendered five years before the decision and before plaintiff's knee injury and two subsequent surgeries); *Girolamo v. Colvin*, 13-CV-6309, 2014 U.S. Dist. LEXIS 72749, *20-21 (W.D.N.Y. May 28, 2014) (finding that opinion was based on an incomplete record because it was rendered before plaintiff's surgery and diagnostic testing).

Here, the ALJ relied, at least in part, on two opinions that were stale. He gave "some weight" to the opinions of the consultative examiner, Dr. Liu, and the reviewing state agency medical consultant, Dr. Feldman, despite their having assessed plaintiff's medical conditions prior to two significant surgeries he underwent. Dr. Liu's opinion, was rendered on May 20, 2017 and Dr. Feldman's opinion was rendered on May 23, 2017.

The record shows that plaintiff underwent right Achilles tendon repair surgery on August 21, 2017 and lumbar fusion surgery on September 25, 2018.

Plaintiff's argument that his foot and back conditions were unstable and deteriorating in the time following those opinions is persuasive. In October 2017, after the Achilles tendon surgery, plaintiff continued to report "a lot of pain." (Tr. 1309). From October through December 2018, after the lumbar surgery, plaintiff continued to report pain, including in his lower back and right leg after bending and lifting. (Tr. 1524, 1528, 1530, 1703). An MRI in December 2018 showed "overall stable lumbar spine alignment," with several unchanged conditions, but also noted "slight left foraminal narrowing secondary to facet joint hypertrophy" at L4-5 and "advanced disc space narrowing with sequela vertebral body fusion and posterior decompression and stable mild foraminal narrowing from facet joint hypertrophy" at L5-S1. (Tr. 1707-08). The need for new surgical intervention and subsequent evidence of pain and dysfunction are highly suggestive, although not conclusive, of further deterioration in plaintiff's condition. *See Vazquez v. Saul*, 2019 U.S. Dist. LEXIS 139858, at *8 (W.D.N.Y. Aug. 16, 2019) ("While Vazquez had foot problems even before she saw [the consultative examiner], her subsequent surgery renders [his] opinion stale with request to Vazquez's foot ailments.").

Further, the ALJ recognized that Dr. Feldman's opinion was stale in that he "did not have the privilege to review the complete record" based on his date of review. The ALJ did not express the same consideration for Dr. Lui's opinion, provided three days earlier. The ALJ also did not rely on any other competent, non-stale medical opinion in assessing plaintiff's RFC, which was in error. *See Lamar v. Comm'r of Soc. Sec.*, 18-CV-00829, 2020 U.S. Dist. LEXIS 17939, at *10-11 (W.D.N.Y. Feb. 4, 2020) (remanding

10

where opinion relied upon was stale and ALJ was not in a position to discern plaintiff's limitations and prognosis to determine RFC); *see also Karmicka M. v. Saul*, 19-CV-914, 2020 U.S. Dist. LEXIS 235711, at *11-12 (W.D.N.Y. Dec. 15, 2020) (finding that, without a medical opinion from an acceptable source about the magnitude and impact of plaintiff's spinal conditions, he could not render an accurate judgment about the plaintiff's functional capacity and limitations associated with the impairments); *Griffith v. Astrue*, 08-CV-6004, 2009 U.S. Dist. LEXIS 27533, at *25, n.9 (W.D.N.Y. July 27, 2009) (noting that State Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence).

The Commissioner argues that the ALJ's failure to obtain updated medical opinions and reports following plaintiff's surgeries was not in error because the burden was on plaintiff to submit medical source opinions and because the ALJ had voluminous medical records upon which to rely. Those records included a recent treatment note from a treating nurse practitioner, NP Pfentner, who observed that plaintiff was not in acute distress in January 2019. (Tr. 1746-49). As a result, the Commissioner submits that there were no "obvious gaps" in the administrative record that precluded the ALJ's ability to make an informed decision. *See Rosa v. Callahan*, 168 F.3d 72, 79, n.5 (2d Cir. 1999) (citing *Perez*, 77 F.3d at 48) ("[W]here there are no obvious gaps in the administrative record and the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."). The Court disagrees. NP Pfentner did not provide an opinion on, or functional assessment of, plaintiff's work-related abilities at that time. In fact, the ALJ noted that he afforded great

11

weight to NP Pfentner's examination findings, but very little weight to her determination that plaintiff had chronic pain.

By failing to obtain a medical opinion and/or functional assessment reflecting plaintiff's abilities following his most recent lumbar and ankle surgeries, the ALJ left a gap in the record and relied instead on his own lay opinion to interpret the medical records and testimony. See Girolamo, 2014 U.S. Dist. LEXIS 72749, at *15 ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.") When such an evidentiary gap exists, the ALJ's RFC determination is not supported by substantial evidence and remand is warranted. See Gross v. Astrue, 2014 U.S. Dist. LEXIS 63251, *50-54 (W.D.N.Y. May 7, 2014). When facing an incomplete record, an ALJ should develop the record by obtaining a consultative examination, re-contacting a medical source, or having an expert testify at the hearing. Id. at *54. Thus, the Court finds that the ALJ's RFC finding is not supported by substantial evidence and that the case must therefore be remanded to obtain an updated and specific functional assessment of the plaintiff's physical limitations.[4]

---

[4] Based on the need for remand, the Court does not find it necessary to reach plaintiff's secondary argument that ALJ erred in assigning weight to the various opinion evidence. The Commissioner is directed to consider this point on remand.

12

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 18) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 22) is denied, and this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   September 27, 2021
        Buffalo, New York

                                              MICHAEL J. ROEMER
                                              United States Magistrate Judge